IN THE OREGON TAX COURT
REGULAR DIVISION

DEPARTMENT OF REVENUE,
*Plaintiff,*

*v.*

Barney E. WHEELER,
and Mary A. Wheeler,
*Defendants.*

(TC 4633)

Marilyn Harbur, Assistant Attorney General, Department of Justice, Salem, argued the cause for Plaintiff (the department).

F. Jackson Lewis II, Tonkin Torp LLP, Portland, argued the cause for Defendants (taxpayers).

Decision for Defendant rendered October 14, 2004. Motions for Reconsideration decided April 25, 2005. *See Dept. of Rev. v. Wheeler II*, 18 OTR 232 (2005).

## HENRY C. BREITHAUPT, Judge.

### I.  INTRODUCTION

This matter, involving the 2000 tax year, is before the court on a stipulated record and cross-motions for summary judgment.[1] As to the factual basis for an outcome, the parties each argue that the other has the burden of proof. The court does not need to decide that issue because Defendants (taxpayers) have met the burden of proof, assuming it was theirs.

---

[1] Defendants filed a Motion for Summary Judgment on February 6, 2004. Plaintiff's Memorandum in Support of Cross-Motion for Summary Judgment was filed February 13, 2004. Although Plaintiff never filed a cross-motion for summary judgment, the court considers the memorandum to include Plaintiff's Cross-Motion for Summary Judgment.

## II. FACTS

Taxpayers are and, at all times material for this case, were residents of the State of Washington. For most of his career, Barney Wheeler (Wheeler) was employed by Fort James Corporation (Fort James), the owner of a paper mill in Wauna, Oregon. Wheeler was not subject to a collective bargaining agreement and was not individually a party to a formal written employment contract.

Wheeler voluntarily terminated his employment relationship with Fort James on December 31, 1999. At that time he was 64 years old. The termination was accomplished pursuant to a letter agreement dated November 1, 1999 (the letter agreement). *See* Appendix A. The letter agreement recited, and the record shows, that employees of Fort James who voluntarily terminated service were not eligible to participate in the Salary Continuation Plan maintained by Fort James. Wheeler and Fort James arrived at a contractual agreement pursuant to which, in consideration for certain payments and benefits, Wheeler would retire no later than December 31, 1999. Wheeler also agreed to release Fort James from any claims, known or unknown, he had against the company. The release language was substantial and contained specific provisions on possible claims relating to age discrimination, employment law violations, or other potential claims. As of December 31, 1999, no formal claim by Wheeler against Fort James was pending in any forum. The letter agreement obligated Wheeler to maintain the confidentiality of its terms. Finally, the letter agreement contained an integration clause, which provided that the letter agreement was a binding contract and no representations, promises, or agreements existed other than those specifically referred to or set forth in writing in the letter agreement.

The amount of cash Wheeler was to receive was apparently calculated based on the number of years of service, 30, which he had with Fort James or its predecessors. Wheeler received those payments in the year 2000 while a Washington resident. He performed no services for Fort James during the year 2000.

One of the provisions of the letter agreement permitted Fort James to withhold amounts for federal and Oregon taxes, which it did. In preparing their 2000 nonresident personal income tax return, taxpayers took the position that none of the payments Wheeler received from Fort James in 2000 constituted Oregon source income. Taxpayers claimed a refund of any monies withheld by Fort James and paid over to Plaintiff (the department). The department denied the refund request and this litigation ensued.

## III. ISSUES

A. Are payments Oregon source income when made to a nonresident taxpayer in exchange for termination by a certain date, confidentiality, and release of potential claims?

B. Are taxpayers entitled to attorney fees under ORS 305.490(3)?[2]

## IV. ANALYSIS

A. *Whether Payment to Taxpayer was Oregon Source Income*

Neither party contests the basic proposition that nonresidents are liable for Oregon taxes on income attributable to sources in Oregon. ORS 316.127. Oregon source income is defined to include:

> "(2) Items of income, gain, loss and deduction derived from or connected with sources within this state are those items attributable to:
>
> "* * * * *
>
> "(b) A business, trade, profession or occupation carried on in this state; and
>
> "* * * * *
>
> "(3) Income from intangible personal property, including annuities, dividends, interest and gains from the disposition of intangible personal property, * * * to the extent

---

[2] All references to Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to the 1999 editions unless otherwise specified.

that such income is from property employed in a business, trade, profession or occupation carried on in this state."

ORS 316.127. Under that statute, formalistic labels attached to items of income, such as "severance pay" or "salary continuation," are not determinative; rather, the source of the payment is decisive. The issue turns, therefore, on whether the payment made by Fort James to Wheeler (the payment) found its source in Oregon, either because it was attributable to a business, trade, profession, or occupation carried on in Oregon, or because it is income from intangible personal property employed in the state.

### 1. *Income Attributable to Occupation Carried on in Oregon*

■    Fundamentally, earned income is Oregon source income if it is attributable to sources in Oregon. ORS 316.127(2)(b). On that point the court finds that the payment at issue in this case was not earned under a contract where performance of service caused the accrual of the benefit. Nothing in the record suggests the existence of such a contract. Indeed, the only such contract contained in the record, the Fort James Salary Continuation Plan, is one under which Wheeler earned no benefit. That fact—no preexisting contractual right to payment by reason of service—distinguishes the payment from those made under "retirement" plans, "deferred compensation" arrangements, or "severance" plans in which service creates a contractual right to a payment. Under such contractual arrangements it is sensible to speak of a future benefit being earned in or attributable to service in a state.

The letter agreement itself states the reasons the payment is made, and those are termination by a certain date,[3] release of actual or potential claims, and confidentiality. The letter agreement specifically provides that it is the statement of the understanding of the parties and that no other agreements or terms exist. Although such agreements

---

[3] The record supports the conclusion that a retirement in 1999 was of material importance to the employer given its accounting period and its desire to have certain changes in workforce accomplished in advance of a contemplated merger.

may not be binding on the department or even, in some cases, particularly instructive,[4] the court will not lightly ignore what the parties said about their bargain.[5] That is especially so where the department has introduced nothing into the record to raise an issue as to whether the statements of the parties were reliable or whether the parties were dealing at arm's length with no purpose to affect tax results by way of contractual language.

■      The department argues that Wheeler's entitlement to payments made by Fort James in 2000 was a product of his many years of employment in Oregon and that 95.11 percent of the amounts are subject to Oregon tax. Although the calculation methodology underlying the 95.11 percentage figure is unclear from the record, the department asserts that the calculation was a function of the number of years Wheeler was employed by Fort James and his active service in Oregon. Insofar as the department argues that the payments are for services because the calculation of the benefit was based on years of service, some of which were in Oregon, the court rejected that argument in *Ballard v. Dept. of Rev.*, 13 OTR 201, 204 (1994). Just as a label applied to a payment is not determinative, so too a calculation method alone is not necessarily determinative of whether a payment is from a certain source. The fact is that, while some documents concerning the letter agreement represented that the payment was based on Wheeler's 30 years of service, nothing in the record indicates that Fort James made the payment because of those 30 years of service. Indeed, if Fort James made the

---

[4] For example, in some cases the factual record will suggest that the parties to a contract did not have differing economic or tax interests on a particular point and described or arranged matters to maximize tax savings. In such cases the court may view with suspicion or even ignore the descriptions of the parties to a contract. The court finds that nothing in this record suggests that tax motivations influenced the parties in the negotiations and terms of their agreement.

[5] The department suggested at the hearing on this matter that an issue of fact might exist regarding the intent of the parties to the letter agreement and that that might prevent summary judgment. The department itself moved for summary judgment, however, asserting no such issues of fact were present. Further, the department had ample opportunity to assert its view on the meaning of the letter agreement by way of affidavit, deposition, or other means under TCR 47. The department did not do so. As stated above, the court finds that the record contains no basis for concluding that the parties to the letter agreement should not, for tax purposes, be considered to have meant what they said; thus, the court sees no reason why summary judgment is not appropriate on this record.

payment on the basis of such service it is hard to see why the letter agreement was necessary, given that the service had already taken place.[6]

The department also cites a number of federal court decisions for the proposition that a severance or termination payment is income and not excluded from taxation by reason of section 104 of the Internal Revenue Code. The department's reliance on those federal cases is not persuasive. Those cases establish something not at issue here: that some post-employment payments are income subject to federal tax and may not be excluded as payments for personal injury. The question here is not taxability in general, but source. That question goes to which state or states have jurisdiction to impose a tax on an item, which is admittedly included in the definition of gross income for federal purposes and, therefore, also in the base for taxation by states, such as Oregon, incorporating federal definitions in determining tax base.

Taxpayers contend that, notwithstanding the methodology for calculation of the amount to be paid, the payments found their origin, or source, in Wheeler's agreement to retire before 2000 and his agreement to release Fort James from any potential liability to him. On that point, the court agrees with taxpayers. In addition, taxpayers point to department rules, which provide for calculation of Oregon source for compensation for personal services based on the number of days service is rendered in Oregon in the year. *See* OAR 150-316.127-(A)(1) and (3). Taxpayers then argue that, because Wheeler rendered no service in Oregon in 2000, they could have no Oregon source income for that year. The court rejects the argument that a nonresident must render service in the year of receipt, in order to make taxable a payment for past service in Oregon. A deferred payment for past service in Oregon may be subject to Oregon tax, at least when the right

---

[6] In some cases the method of computation of an item of income or tax reflects an economic reality that the court should consider. Here, however, the record amply demonstrates that the payment was a function of the release of claims, time certain departure, and confidentiality. Although the period of employment affected the amount of the payment, the record indicates that Fort James would not have made the payment absent the release of claims and other factors listed above.

to the payment was, in whole or in part, earned through performance of service in Oregon. The fact that no service is rendered in Oregon in the year of receipt of such a payment is irrelevant.[7] Nonetheless, the court concludes that the payment by Fort James to Wheeler is not attributable to a business, trade, profession, or occupation that Wheeler carried on in Oregon.

## 2. *Income from Intangible Personal Property*

■        Although the court concludes that the payment was not attributable to Wheeler's occupation and service in Oregon, such a payment may still be taxable if it relates to intangible personal property "employed in a business, trade, profession or occupation carried on in this state." ORS 316.127(3). The department does not appear to challenge the proposition that if the payments were for a release of claims, that disposition of intangibles would not be taxable in Oregon to a nonresident. Moreover, the department has not asserted that Wheeler employed his intangible claims or potential claims in his occupation in this state.

■        In fact, the department has argued that the payments should not be treated as being for a release of claims because Wheeler had no claims pending or threatened against Fort James. That argument ignores a fact of which the court can take judicial notice: a value exists in a general release of potential claims as well as a release of actual claims. Further, the court finds that the record as to the size and timing of the payment suggests that the payment was commensurate with the agreement as to a time certain retirement, the release of claims, and the confidentiality undertakings. Thus nothing here suggests that the payment was for some unstated consideration which would require further analysis. The court concludes, therefore, that the payment from Fort James to Wheeler was not income from intangible personal property employed in a business, trade, profession, or occupation carried on in Oregon.

---

[7] Indeed, it is precisely because such payments are taxable that it became necessary to adopt a federal statute providing partial protection to taxpayers who earn payments in a state but receive them in years when they are not residents of that state. *Cf.* ORS 316.127(9); OAR 150-316.127(9) (2004).

### 3. *The Payment in this Case was not Oregon Source Income*

Under ORS 316.127, income is only Oregon source income if the income was attributable to a business, trade, profession, or occupation carried on in Oregon, or because it is income from intangible personal property employed in the state. Here, the court finds that the payment made by Fort James to Wheeler pursuant to the letter agreement was made for a release of claims, a time certain termination, and confidentiality, and, therefore, was not attributable to a business, trade, profession, or occupation that Wheeler carried on in Oregon. Moreover, the court finds that the payment was not derived from intangible personal property employed in a business, trade, profession, or occupation in Oregon. The court holds, therefore, that the payment was not Oregon source income.

## B. *Attorney Fees*

■ The court has discretionary authority to award reasonable attorney fees to a prevailing individual taxpayer. ORS 305.490(3). In support of their claim for attorney fees, taxpayers rely on *Romani v. Dept. of Rev.*, 10 OTR 64, 74 (1985), for the proposition that the court may award attorney fees in cases "where the law, regulation or tax forms are ambiguous or unclear." That focus is too narrow. In determining whether to award reasonable attorney fees, this court must consider the factors listed in ORS 20.075. *See Preble v. Dept. of Rev.*, 331 Or 599, 602, 19 P3d 335 (2001). Based on all of the pertinent factors listed in ORS 20.075(1),[8] the court

---

[8] In pertinent part, ORS 20.075(1) provides:

"A court shall consider the following factors in determining whether to award attorney fees in any case in which attorney fees are authorized by statute and in which the court has discretion to decide whether to award attorney fees:

"* * * * *

"(b) The objective reasonableness of the claims and defenses asserted by the parties.

"* * * * *

"(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

"(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

concludes that an award of attorney fees is appropriate in this case.

The court notes that the parties originally presented this case in the Magistrate Division. In that division, the issue of source was litigated. Although the magistrate characterized the issue as being whether the payment by Fort James to Wheeler was "severance pay," the magistrate alerted the parties to, and discussed in a journal entry and in the decision, the application of *Ballard* to the facts of this dispute. Moreover, the magistrate reached the result that the payment was "for agreeing not to sue" and was not for "compensation of personal services rendered in the State of Oregon." As is apparent from the language of this decision, this division has decided the matter on essentially the same grounds as did the magistrate.[9]

Despite having a magistrate consider whether the payment was Oregon source income and despite having received the decision that, in fact, the payment was for a release of claims, the department appealed to this division under the same legal theory, arguing that the payment was severance pay or some other payment made in consideration of prior service in Oregon. The magistrate fully considered the department's arguments and the department did not credibly assert that the magistrate had addressed the issues improperly.

Although a party may avail itself of a right to appeal to the Regular Division, exercise of that right may come with a cost. That cost may be reasonable attorney fees and expenses of the opponent in cases, such as this, in which the appealing party has received a well reasoned decision from a

---

"* * * * *

"(h) Such other factors as the court may consider appropriate under the circumstances of the case."

[9] Whereas the magistrate more narrowly decided that the payment was for a release of claims, this division has also concluded that the payment was, in part, for a time certain termination date and confidentiality from Wheeler. Those additional points do not detract, however, from the common conclusion that the payment was not made in consideration of prior service in Oregon.

magistrate on the merits, appeals to this division on essentially the same record,[10] and makes no new legal argument or credible argument that the magistrate ignored or misapplied the law.[11]

■    Such a situation presents the court with an additional circumstance it believes it may and should consider under ORS 20.075(1)(h): whether the failure to award attorney fees will deter good faith claims for tax relief in the first instance.[12] This court concludes that a failure to award attorney fees in cases such as this could deter similarly situated taxpayers from appealing to the court. Such taxpayers could

---

[10] The department deposed Wheeler on October 14, 2003, and a copy of the deposition is included in the stipulated record. Although that deposition is in the record, the department has not relied on it in briefings submitted to the court. The department does refer, however, to at least one document that the magistrate apparently did not have: a letter dated December 3, 1999, written by Keith B. Larson, Human Resource Manager for Fort James. That letter stated, "Mr. Wheeler's position at [Fort James] will be eliminated effective December 31, 1999. Barney Wheeler will receive a salary continuance benefit based on his 30 years of service." The department has not shown, and indeed cannot show, how, on the basis of that statement, the arrangement between Wheeler and Fort James was anything other than what was described in the letter agreement. The court concludes, therefore, that this record is essentially the same record as that reviewed by the magistrate.

[11] The court may determine that no fees should be awarded against a party that appeals to this division and does not prevail if that party proceeds on a materially different record under the same legal argument or on the same record under a different legal theory. The status of the case as *de novo* in the Regular Division, permits such alteration. ORS 305.425. Moreover, this court may also decline to award attorney fees in cases of first impression, even if the nonprevailing party at the Magistrate Division stipulates to the same factual record and persists at this division with essentially the same legal argument or arguments. The court notes, however, that the addition of irrelevant or "makeweight" arguments will not serve to avoid the foregoing reasoning. Here, for example, the department also argued that the payment is income under federal income tax principles. That issue, however, was not relevant to this matter. The issue in this case is whether the payment was Oregon source income; thus, the addition of that irrelevant argument has not changed the substantive determination with respect to attorney fees in this case.

The court notes that the department may also seek to recover attorney fees in situations in which a taxpayer appeals to the Regular Division under the same record and with the same substantive legal arguments, and this division decides the matter on essentially the same grounds as the Magistrate Division. *See Patton I v. Dept. of Rev.*, 18 OTR 111 (2004).

[12] The court previously has found other circumstances it may consider under ORS 20.075(1)(h). *See Dept. of Rev. v. Rakocy*, 15 OTR 389, 392, 394 (2001) (court will consider the *Romani* "guidelines" as to "whether laws, administrative rules, or tax forms are ambiguous" under paragraph (h)).

view as prohibitive, at the very outset of a dispute, the potential cost of additional or duplicative attorney fees required to respond to department appeals from taxpayer victories in the Magistrate Division.

█ The statutes make clear that the first process due to a taxpayer is the relatively informal and accessible process in the Magistrate Division. A taxpayer who is victorious in the Magistrate Division may not recover fees under ORS 305.490 unless that decision is appealed. However, if the department appeals, the court may award fees and costs to that taxpayer, including those incurred in the Magistrate Division. ORS 305.490(3)(a); TCR 68. That statutory structure and rule means that the department has access to the court for one adjudication free of any risk of an attorney fee award against it. Thereafter, however, the risk of an adverse fee award, including an award for costs of previous proceedings, increases if the department appeals.[13] Moreover, although the legislature has specified more bases or occasions for awards against the department than against taxpayers, the department also may have a right to collect fees and damages in cases in which a taxpayer appeals a department victory in the Magistrate Division without an objectively reasonable basis. ORS 305.437; ORS 20.105.[14]

This court, in its discretion and in consideration of the factors listed in ORS 20.075(1) holds, therefore, that taxpayers are entitled to reasonable attorney fees in this case.

## V.   CONCLUSION

Based on the foregoing, the court concludes that the payment from Fort James to Wheeler was not Oregon source income. Now, therefore,

---

[13] Only an increased risk exists, not a certainty. Taking into account the factors listed in ORS 20.075(1), the court will not award fees to some prevailing parties. *See Allen v. Dept. of Rev.*, 17 OTR 248 (2004) (taxpayer appealed typical property valuation dispute). *See also Rakocy*, 15 OTR at 395 (taxpayer's alternative legal arguments offered the court "little assistance").

[14] As noted above, the court made such an award in *Patton*, when a taxpayer unsuccessfully appealed to the Regular Division with the same factual and legal arguments as advanced in the Magistrate Division and the arguments were found to be without objectively reasonable basis, taking into account the decision of the magistrate. 18 OTR 111 (2004).

IT IS ORDERED that Defendants' Motion for Summary Judgment is granted;

IT IS FURTHER ORDERED that Plaintiff's Cross-Motion for Summary Judgment is denied; and

IT IS FURTHER ORDERED that Defendants are awarded their reasonable attorney fees.

Costs to Defendants.

## APPENDIX A

## EXCERPTS FROM THE NOVEMBER 1, 1999, LETTER AGREEMENT BETWEEN FORT JAMES AND TAXPAYER

"You have held the position of **Manager I, Manufacturing Operations** at our Wauna Mill. You have advised us of your desire to resign from the Company. As you know, employees who resign are not entitled to salary continuation benefits under the Company's Salary Continuation Plan. You and Fort James desire, however [*sic*] that you settle, resolve and release any and all existing or potential claims, controversies, differences, disputes or disagreements, known or unknown, that you may have with Fort James Corporation, Fort James Operating Company, and their affiliates, subsidiaries, officers, directors, employees and agents (collectively "Fort James") in exchange for Fort James' agreement to provide you certain benefits to which you may not otherwise be entitled upon you separation.

Accordingly, you and Fort James agree as follows:

"1. **Continued Employment and Termination Date**. Absent misconduct, you will remain employed until **December 31**, 1999, at which time your employment will terminate. * * *

"2. **Severance:** Fort James agrees to continue your base salary for a period of **45** weeks from your last day of employment as described in Paragraph 1, in the same manner as if you had remained an active employee, less deductions for tax withholding or authorized by you.

"3. **Benefit Continuation:**

"a) You will be eligible to continue participation in the Company's health and dental plans in the same manner as if you had remained an active employee of the Company through and until the conclusion of the salary continuation period. This salary continuation benefit is provided solely as an obligation of this Agreement and both parties recognize that you are not receiving, and release all claims

to, any benefits under the Fort James Salary Continuation Plan.

"b) You will continue to be eligible to participate in the Company sponsored Life Insurance Plans in the same manner as if you had remained an active employee of the Company through and until the conclusion of the salary continuation period.

"* * * * *

"f) All other benefits not specifically discussed in this Agreement terminate effective **December 31, 1999**.

"4. **General Release:** You hereby agree, for yourself, your successors, heirs, representatives, executors, agents and assigns, to release and forever discharge Fort James, its affiliates, subsidiaries, parents, predecessors, successors and assigns and their respective directors, officers, employees and agents thereof from any and all claims, debts, responsibilities and liabilities of every kind and character whatsoever, known or unknown, suspected or unsuspected, which you have ever had or now may have against them including but not limited to, any and all claims arising out of your employment or termination of employment with Fort James. You acknowledge that this Release includes any and all claims whether in contract or in tort, claims that may be brought on your behalf by others, claims brought before any court or administrative agency, or claims under any federal, state or local statute, law or ordinance, whatever including any claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Acts, the Age Discrimination Act, the Employee Retirement Income Security Act, the Rehabilitation Act of 1973, or any other law.

"5. **Special Release Notification:** This General Release includes a release of all claims under the Age Discrimination en [*sic*] Employment Act ("ADEA") and, therefore, pursuant to the requirements of the ADEA, you acknowledge that you have been advised

"a)   that this Release includes but is not limited to, all rights or claims arising under the ADEA up to and including the date of execution of this Release, but does not waive rights or claims that may arise after the death of execution;

"b)   to consult with an attorney or any other advisor of your choosing concerning your rights and obligations under this Release;

"c)   to fully consider this Release before executing it, and that you have been offered at least 45 days to do so;

"d)   that this Release shall become effective and enforceable seven days following execution of this Termination Agreement and General Release, during which seven day period you understand that you may revoke your acceptance of this Termination Agreement and General Release by delivering written notice to me at this address; and

"e)   to insure, compliance with all legal requirements a Special Notice Addendum has been attached to this Agreement to provide additional facts related to this severance arrangement.

"It is acknowledged that this Termination Agreement and General Release does not release your right to any vested benefits under the Fort James Retirement Plan for Salaried and Other Non-Bargaining Unit Employees or any vested rights in the Fort James 401(k) Plan. Your eligibility for benefits under those plans will be controlled by the terms of these plans.

\* \* \* \* \*

"7.  **Confidentiality:** You agree that you will not divulge the contents of this Agreement which are agreed to be confidential in nature except to your spouse, attorney or income tax preparer. It is further agreed by you that if this Agreement or a portion thereof is disclosed as described above, you agree to require and hereby warrant that each of

them keep any information so disclosed confidential. If you breach this obligation before the conclusion of any period of salary continuation, Fort James will have no further obligation to you under this Agreement.

"8.  **Entire Agreement:** You understand and agree that all terms of this Termination Agreement and General Release are contractual and not a mere recital. The parties represent and warrant that in negotiating and executing this Termination Agreement and General Release each have had an opportunity to consult with legal counsel or other representatives of their own choosing, concerning the meaning and effect of each term or provision hereof, and that there are no representations, promises or agreements other than those specifically referred to or set forth in writing herein. The parties represent and warrant that they have read this Termination Agreement and General Release in its entirety, fully understand and agree to its terms and provisions, and intend and agree that it is a final and legal binding settlement and release of all claims you may have."

(Emphasis in original.)